# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| MELISSA E. TORRES, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **Case No: 05 C 5166** |
| ) | |
| JO ANNE B. BARNHART, ) | **Magistrate Judge Schenkier** |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER[1]

The plaintiff, Melissa Torres, seeks judicial review under 42 U.S.C. § 405(g) of the Social Security Act (the "Act") of a final decision by the Commissioner of the Social Security Administration (the "Commissioner") denying her application for a period of disability and disability insurance benefits. The parties have filed cross motions for summary judgment; Ms. Torres seeks reversal or remand of the Commissioner's decision (doc. # 23), and the Commissioner seeks a judgment affirming the decision (doc. # 29). For the reasons set out below, the Court denies the Commissioner's motion for summary judgment, grants Ms. Torres's motion for summary judgment, reverses the ALJ's judgment, and remands this case for further proceedings. *See Melkonyan v. Sullivan,* 501 U.S. 89, 101-02 (1991).

---

[1]On May 19, 2006, this case was reassigned to this Court by the Executive Committee after the parties consented to have all proceedings in this case conducted by this Court, including entry of final judgment (docs. # 17, 19, 20), pursuant to 28 U.S.C. § 636(c).

## I.

We begin with the procedural history in this case. On July 28, 2003, Ms. Torres filed an application for benefits, alleging a disabling back impairment due to degenerative disc disease with an onset date of October 12, 2002 (R. 58-61, 78). Her application was denied both at the initial level of administrative review on September 24, 2003, and again upon reconsideration on November 7, 2003 (R. 28, 33). Through her counsel, Ms. Torres filed a request for an administrative hearing on November 25, 2003 (R. 40). On October 14, 2004, an Administrative Law Judge ("ALJ") conducted a hearing during which both Ms. Torres and Mr. Lee Knutson, a vocational expert ("VE"), testified regarding her alleged back disorder (R. 404). In a written decision dated January 5, 2005, the ALJ denied Ms. Torres's claim (R. 12-23), finding that Ms. Torres's impairments did not prevent her from continuing her past relevant work as a housekeeper and a fast food cashier (R. 23). This decision became the final decision of the Commissioner after the Social Security Administration Appeals Council denied Ms. Torres's request for review on July 11, 2005 (R. 5-7). Ms. Torres filed a timely complaint for administrative review on January 11, 2006.

## II.

Next, we review the relevant background facts taken from the administrative record, the administrative hearing transcript, and the ALJ's written decision. The Court will first discuss Ms. Torres's personal and medical history, after which it will summarize the hearing testimony and the ALJ's written decision.

### A.

Ms. Torres is 41 years of age and is married with two teenaged children (R. 58, 407). She has completed high school (R. 407), and she has held jobs as a fast food preparer/cashier, a

hotel housekeeper, and, most recently, a housekeeper and laundry worker at an adult care facility (R. 98-101, 118). The record indicates that Ms. Torres first experienced the onset of significant back pain in October 2002, which caused her to stop working shortly thereafter (R. 245). Two months later, Ms. Torres briefly resumed employment (*id.*), but she left her job permanently in January 2003, allegedly on the advice of her doctor, after experiencing an on-the-job injury to her back (R. 106, 242, 245, 408).

Over the course of her disability application, Ms. Torres has claimed that she suffers from constant back pain that radiates down her right leg (R. 106). She has difficulty walking, sitting, standing, reaching up or out, climbing stairs, and bending (R. 78, 95-96, 106-07). Because of her back pain, she is unable to do her own laundry, cannot stand while cooking for very long, has difficulty picking up groceries, and must sit down to wash dishes (R. 95, 108). As for matters of personal care, Ms. Torres has difficulty dressing herself, needs help getting out of bed, and must sit down while taking a shower (R. 95-96). Her husband and children help her with many of her daily activities (R. 108, 414-15).

Ms. Torres's medical records reveal that she has been seeking treatment for lower back pain since January 2002 (R. 182). She was first admitted to the hospital with complaints of back pain in October 2002, at which time she also stopped working (R. 169-70, 245). While she was at the hospital, Ms. Torres underwent a lumbar MRI, which indicated "right sided sciatica" (R. 271-72, 277). A few weeks later, her treating spinal specialist, Dr. David Spencer, ordered a CT scan, which also indicated degenerative disease of the facets on the right (R. 298). Since Dr. Spencer did not consider her a surgical candidate (R. 240), Ms. Torres instead underwent nine physical therapy sessions through December 2002, which left her "feeling good" (R. 194).

3

Accordingly, Dr. Spencer authorized her to return to work in December 2002, provided that she was "cautious about repetitive bending and lifting below waist level" (R. 279). Ms. Torres left work permanently, however, after re-injuring her back the following month (R. 242, 408).

Throughout 2003, Ms. Torres continued to consult doctors about her back condition (R. 212, 227). In August 2003, Dr. Ahmair Shaikh performed a consultative internal medicine examination on Ms. Torres (R. 245). Dr. Shaikh noted weakness and restricted range of motion in Ms. Torres's lumbosacral spine and right leg, as well as some radiculopathy because of weakness and pain radiating into her right leg, although he also noted that she did not appear to be in acute distress after sitting for over thirty minutes (R. 246-47). The following month, Dr. Spencer prescribed another round of physical therapy to treat Ms. Torres's lower back pain (R. 255).

On October 27, 2003, the state Bureau of Disability Determination Services ("DDS") performed a Residual Functional Capacity Assessment of Ms. Torres's capabilities (R. 3, 263-70). The state non-treating physician, Dr. Chansoo Kim, found that Ms. Torres was able to lift up to twenty pounds occasionally; lift up to ten pounds frequently; stand, walk, or sit for six hours out of an eight-hour workday; stoop, crawl, crouch, kneel and climb stairs occasionally; and push or pull items in an unlimited capacity (id.). He further stated that she was never able to climb ladders or ropes (id.). The record is silent as to how Dr. Kim weighed Ms. Torres's medical evidence in order to reach these conclusions, though it appears that he did not have an opportunity to examine Ms. Torres but instead relied on the contents of her medical records to make his judgment (R. 263).

4

After undergoing unrelated surgery for carpal tunnel syndrome in her right arm in February 2004 (R. 367), Ms. Torres visited Dr. Bruce Montella on June 3, 2004, to seek further treatment for her back (R. 307-08). After conducting a physical exam, Dr. Montella noted that Ms. Torres was experiencing "severe and debilitating low back pain" (R. 308), and he prescribed "non-operative management including activity modification, anti-inflammatories and physical therapy modalities" (id.). He explained his choice of treatment by stating that "further intervention needs to be considered only as an absolute last resort as it has distinct morbidity and unpredictable benefit" (id.). Over the following four months, Dr. Montella examined Ms. Torres three additional times (R. 307-12). During an examination in August 2004, Dr. Montella noted that Ms. Torres had "no significant radiating extremity pain or neurologic impairment" and diagnosed "back pain consistent with lumbar discogenic pain" (R. 310). Two months later, however, Dr. Montella examined Ms. Torres again and stated that her impairment was such that she could not perform her previous job as a housekeeper (R. 313). He opined that she could neither lift any weight nor stand, walk, or sit for any prolonged period of time (R. 316). Finally, Dr. Montella also stated that Ms. Torres was only occasionally capable of reaching above her shoulders and of performing gross manipulations (R. 317).

### B.

At the administrative hearing, Ms. Torres testified that her back pain developed in October 2002 (R. 408). She described her attempt to return to her job as a laundry worker in December 2002, but she stated that she left that position a month later on the advice of her doctor, as "there was a lot of bending and I just wasn't getting any better" (id.). Since then, Ms. Torres has not looked or applied for any jobs (R. 409).

5

When questioned about her physical limitations, Ms. Torres testified that she could not perform jobs such as a fast food worker or cashier, since standing "too long" induced back pain (R. 408). Ms. Torres stated that she would be unable to perform even those jobs which allowed her to sit and stand as needed, since her "back always hurts" and she "can't lift anything" (R. 409). Later in the hearing, Ms. Torres testified that "if my back doesn't hurt that bad I can maybe walk about a block" and clarified that she did not use canes or similar devices to walk (R. 413). She maintained that she could stand or sit only for about ten to fifteen minutes at a time (R. 413-14), since her lower back "hurts twenty-four hours a day" (R. 412). She also described a "sharp shooting pain that goes down my right leg" and testified that "if it's going to rain, like today . . . I feel I have a knife in my back and my leg" (R. 412, 422). The ALJ, however, noted in her opinion that Ms. Torres did not appear to be uncomfortable sitting through the 45-minute hearing (R. 21).

When the ALJ questioned her about the course of her medical treatment, Ms. Torres explained that while physical therapy had helped her in the past, more recent efforts at physical therapy had been ineffective (R. 410). Ms. Torres testified that she was taking Celebrex and Vicodin (id.), and she would also use ice packs and heating pads to ameliorate the pain (R. 419). She stated that her current physician, Dr. Bruce Montella, "has no idea if I'll just stay the way I am or I'll get worse" (R. 423). As for her carpal tunnel syndrome, Ms. Torres testified that surgery had been able to resolve the problems she had experienced with her hand (R. 411).

Lee Knutson, a vocational expert who had reviewed Ms. Torres's file and heard her testimony, also testified at the hearing (R. 423-28). The VE testified that both of Ms. Torres's past jobs as a fast food worker and a hotel housekeeper were unskilled positions with light

6

physical demands (R. 424). The VE also stated that Ms. Torres's most recent position as a housekeeper and laundry worker at an adult care facility was unskilled but included medium physical demands (*id.*).

The ALJ then inquired, hypothetically, whether a person could perform those prior jobs if that person were able to (a) stand and walk for six hours out of an eight-hour day, (b) sit for the same length of time, (c) lift and carry up to ten pounds frequently, (d) lift up to twenty pounds occasionally, and (e) stoop, crawl, crouch, kneel and climb stairs only occasionally, but never climb ladders or ropes (*id.*). The VE replied that such a person "would be able to do the light jobs in her past work, the housekeeping and the cashier/fast food worker" (*id.*). He subsequently clarified that these positions would not be available to a person who needed to stand every forty-five minutes, although that person could still work at one of approximately eight thousand "sedentary clerical and cashier" jobs available in the Chicago metropolitan area (R. 424-25). Upon cross-examination by Ms. Torres's attorney, the VE stated that if such a person would need to sit and stand whenever needed, the number of available jobs might decrease by 10 percent (R. 426). Finally, he testified that if a person had to lie down during the day and could not lift anything above five pounds, there would be no full-time jobs available to him or her (R. 425).

## C.

On January 5, 2005, the ALJ issued a decision that rejected Ms. Torres's claim for a period of disability and disability insurance benefits (R. 12-23). The ALJ applied the standard five-step sequential evaluation described in 20 C.F.R. §§ 404.1520 and 416.920 (2006). At Step 1, the ALJ considered whether Ms. Torres was engaged in substantial gainful activity (R. 16).

7

She found that Ms. Torres was not so engaged, and she explained that Ms. Torres's brief attempt to return to work in December 2002 and January 2003 constituted an unsuccessful work attempt and thus did not amount to disqualifying substantial gainful activity (*id.*). At Step 2, the ALJ considered whether Ms. Torres had a severe impairment, defined as an impairment or combination of impairments that significantly limits an individual's ability to perform basic work activities (*id.*). There, she found that Ms. Torres did suffer from severe impairments (*id.*).

At Step 3, the ALJ considered whether Ms. Torres's condition met or equaled the level of severity contemplated for any impairment as listed in 20 C.F.R. Pt. 404, Subpt. P, App. I (R. 16-17). In so doing, the ALJ found that Ms. Torres's back impairment was not accompanied by certain neurological deficits as required by 20 C.F.R. Pt. 404, Subpt. P, App. I § 1.04A, and since Ms. Torres did not use two canes, two crutches, or a walker, she did not have an inability to ambulate effectively as required by 20 C.F.R. Pt. 404, Subpt. P, App. I § 1.02A (R. 16). Further, the ALJ stated that Ms. Torres's condition did not satisfy the requirements of 20 C.F.R. Pt. 404, Subpt. P, App. I § 1.02B, as it did not involve one major peripheral joint in each upper extremity or an inability to use either extremity to perform fine and gross movements effectively (*id.*). After going through a similar evaluation of Ms. Torres's mental capabilities, which are not at issue in this appeal, the ALJ ultimately found that Ms. Torres had not established disability at the third step of the sequential evaluation (R. 17).

At Step 4, the ALJ determined that Ms. Torres's residual functional capacity ("RFC") did not preclude her from performing her past relevant work as a housekeeper and a fast food cashier, and that she was, therefore, not entitled to disability insurance benefits (R. 22-23). Specifically, the ALJ found that Ms. Torres's condition prevents her from undertaking the

8

following activities: "lifting more than 20 pounds occasionally or more than 10 pounds frequently; standing and/or walking for more than a total of 6 hours in an 8-hour workday; sitting for more than a total of 6 hours in an 8-hour workday; climbing (ascending) stairs/ramps more than occasionally; stooping, crawling, crouching, and kneeling more than occasionally, and climbing ropes, ladders, or scaffolds" (R. 17).

The ALJ explained her choice of RFC by stating that "the medical findings do not support the existence of [greater] limitations" (R. 18). The ALJ then summarized the medical record, throughout which she noted a continued regime of conservative treatment (R. 18-20). She found that Dr. Montella's opinions were entitled to "no weight," because they were "so extreme (given very minimal findings) as to be not plausible, as well as inconsistent with the other medical evidence of record" (R. 20). The ALJ further explained that if Ms. Torres were "truly disabled" by her alleged impairments, she would expect to see a different course of treatment and "more significant physical examination abnormalities" (R. 20). The ALJ also observed that her RFC conclusions were consistent with the opinions of the state Disability Determination Services physicians, explaining that "[a]lthough those physicians were non-examining and, therefore, their opinions do not as a general matter deserve as much weight as those of examining or treating physicians, those opinions do deserve some weight, particularly in a case like this in which there exists a number of other reasons to reach similar conclusions" (R. 20).

Additionally, the ALJ found that Ms. Torres "lacks full credibility" (R. 21). She observed that the claimant's medications and treatments were not "the type of medical treatment one would expect for a totally disabled individual" (*id.*). She also noted that Ms. Torres

9

"managed to sit through most of the hearing, which lasted approximately 45 minutes, without exhibiting any sign of discomfort" (*id.*). Moreover, the ALJ stated that since the record reflected work activity after the October 2002 onset date, Ms. Torres's activities "have, at least at times, been somewhat greater than the claimant has generally reported" (*id.*). She noted that the claimant's description of her limited daily activities "cannot be objectively verified," and she found that even if those limitations were true, "it is difficult to attribute that degree of limitation to the claimant's medical condition" (*id.*). Without going into further analysis of the remainder of the medical evidence, the ALJ concluded her explanation of her RFC choice by stating that "the objective medical evidence does not provide a basis for finding limitations greater than those determined in this decision" (*id.*).

The ALJ concluded her assessment by considering, at Step 4 of the required sequential evaluation, whether Ms. Torres could perform any past relevant work, given her RFC. Here she "adopt[ed] the vocational expert's testimony" and found that Ms. Torres retained the ability to work as a housekeeper and as a fast-food cashier (R. 22). Thus, the ALJ found that she was not suffering from a disability and accordingly denied her Social Security benefits (R. 22-23).

### III.

We begin the analysis with a brief overview of the relevant legal standards. To establish a "disability" under the Act, a claimant must show an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A) (2000). A claimant must demonstrate that her impairments prevent her from performing not only her past work, but also

10

any other work that exists in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A). The Social Security regulations prescribe a sequential five-part test for determining whether a claimant is disabled. *See* 20 C.F.R. § 404.1520. Under this test, the ALJ must consider (1) whether the claimant is presently unemployed; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the claimant's impairment meets or equals any impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4) whether the claimant is unable to perform her past relevant work; and (5) whether the claimant is unable to perform any other work existing in significant numbers in the national economy. *See id.*; *see also Young v. Sec'y of Health and Human Services*, 957 F.2d 386, 389 (7th Cir. 1992). A finding of disability requires an affirmative answer at either Step 3 or 5. A negative answer at any step other than Step 3 precludes a finding of disability. *Young*, 957 F.2d at 389. The claimant bears the burden of proof at Steps 1 through 4, after which the burden of proof shifts to the Commissioner at Step 5. *Id.*

In reviewing the Commissioner's (here the ALJ's) decision, this Court may not decide facts anew, reweigh the evidence, or substitute its own judgment for that of the Commissioner. *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994). The Court must accept the findings of fact which are supported by "substantial evidence," 42 U.S.C. § 405(g) (2000), which is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Herron*, 19 F.3d at 333 (quotations omitted). Where conflicting evidence allows reasonable minds to differ, the responsibility for determining whether a claimant is disabled falls on the Commissioner (via the ALJ), not the courts. *See Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir. 1990); *see also Stuckey v. Sullivan*, 881 F.2d 506, 509 (7th Cir. 1989) (noting that the ALJ has

11

the authority to assess medical evidence and give greater weight to that evidence which the ALJ finds more credible). The Court is limited to determining whether the Commissioner's final decision is supported by substantial evidence and based upon proper legal criteria. *Ehrhart v. Sec'y of Health and Human Services*, 969 F.2d 534, 538 (7th Cir. 1992) (citations omitted). A finding may be supported by substantial evidence even if a reviewing court might have reached a different conclusion. *See Delgado v. Bowen*, 782 F.2d 79, 83 (7th Cir. 1986) (per curiam).

The Commissioner (and ALJ), however, is not entitled to unlimited judicial deference. The ALJ must consider all relevant evidence and may not select and discuss only that evidence which favors his or her ultimate conclusion. *See Herron*, 19 F.3d at 333. Although the ALJ need not evaluate in writing every piece of evidence in the (often lengthy) record, the ALJ's analysis must be articulated at some minimal level and must state the reasons for accepting or rejecting "entire lines of evidence." *Id.*; *see also Young*, 957 F.2d at 393 (stating that an ALJ must articulate a reason for rejecting evidence "within reasonable limits" if there is to be meaningful appellate review). The written decision must provide a "logical bridge from the evidence to [the] conclusion" that allows the reviewing court a "glimpse into the reasoning behind [the] decision to deny benefits." *See, e.g., Zurawski v. Halter*, 245 F.3d 881, 887, 889 (7th Cir. 2001) (quoting *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000)). This is especially true regarding determinations of the claimant's credibility, since both the case law and the regulations require an ALJ to minimally articulate the specific reasons for a credibility finding. *See Zurawski*, 245 F.3d at 887. Specific reasons are required so that the reviewing court can ultimately assess whether the ALJ's determination was supported by substantial evidence or, if not, was "patently wrong." *Id.* (quoting *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000)).

Ms. Torres challenges the ALJ's determination of her RFC, as well as her findings at Step 3 of the sequential analysis. The Court will address her arguments in turn.

### A.

Ms. Torres launches a number of attacks on the ALJ's determination of her residual functional capacity ("RFC"). As set forth above, the ALJ found that Ms. Torres's condition prevents her from undertaking the following activities: "lifting more than 20 pounds occasionally or more than 10 pounds frequently; standing and/or walking for more than a total of 6 hours in an 8-hour workday; sitting for more than a total of 6 hours in an 8-hour workday; climbing (ascending) stairs/ramps more than occasionally; stooping, crawling, crouching, and kneeling more than occasionally, and climbing ropes, ladders, or scaffolds" (R. 17).

Ms. Torres challenges this RFC determination on a number of interrelated grounds. We address those grounds below.

### 1.

Ms. Torres begins by arguing that the ALJ failed to conduct a proper function-by-function assessment of her RFC (Pl.'s Mem. at 12). An ALJ must conduct a function-by-function RFC assessment that considers each of the claimant's work-related physical functions – sitting, standing, walking, and so on – separately. *See Marlow v. Barnhart*, No. 04C7780, 2005 WL 2562652 at \*18 n.30 (N.D. Ill. Oct. 13, 2005) (citing SSR 96-8p, 1996 WL 374184 at \*3, 5 (S.S.A.)). Moreover, SSR 96-8p requires that "[t]he RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Id.* (citing SSR 96-8p, 1996 WL 374184 at \*7).

Here, the ALJ did not provide any clear explanation of how the evidence supported each particular conclusion about Ms. Torres's physical capacity. That error is enough to warrant reversal and remand. *See Briscoe v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005) ("Contrary to SSR 96-8p . . . the ALJ did not explain how he arrived at these [RFC] conclusions; this omission in itself is sufficient to warrant reversal of the ALJ's decision"). For example, the ALJ did not explain what evidence justified adopting a six-hour limitation on standing and sitting, rather than a four- or two-hour limitation. Instead, she recited the record that pertained to Ms. Torres's physical condition and then offered such circular explanations as "the objective medical evidence does not provide a basis for finding limitations greater than those determined in this decision" (R. 21).

Rather than analyzing the available medical evidence, the ALJ appears to have reached her conclusions by adopting the 2003 RFC assessment of Dr. Kim, the non-examining state DDS physician (R. 20, 263-70). This constitutes an additional error; an ALJ may rely solely on such opinions "only so long as there is no contradictory evidence in the record." *Ribaudo v. Barnhart*, 458 F.3d 580, 584 (7th Cir. 2006) (citing *Scheck v. Barnhart*, 357 F.3d 697, 700-01 (7th Cir. 2004)). Here, Dr. Kim's assessment was contradicted by Dr. Montella's later assessment, which, as described below, was improperly disregarded by the ALJ.

Therefore, the ALJ's failure to support her RFC determination with specific evidence, as well as her improper reliance on the opinions of state non-examining physicians, warrants remand. On remand, the ALJ must comply with SSR 96-8p when reassessing Ms. Torres's RFC. *See Marlow*, 2005 WL 2562652 at *18 n.30.

14

**2.**

In attacking the RFC determination, Ms. Torres challenges the ALJ's decision to give Dr. Montella's opinion "no weight" in the RFC calculus (Pl.'s Mem. at 11-12; R. 20). The ALJ stated that she assigned no weight to his opinion, because it was "so extreme (given very minimal findings) as to be not plausible, as well as inconsistent with the other medical evidence of record" (R. 20).

We first address the ALJ's reliance on inconsistencies she found in the record between Dr. Montella's opinion and other evidence. The ALJ identified a conflict between Dr. Montella's October 2004 assessment that Ms. Torres was unable to sit, stand, and perform other daily activities and Dr. Spencer's November 2002 judgment that she was capable of returning to work (*id.*). She also identified another conflict between Dr. Montella's opinion and Dr. Kim's RFC assessment (*id.*).

We find nothing in the record, however, indicating that the ALJ considered the fact that Dr. Spencer's November 2002 judgment was made prior to several significant medical developments, such as the reappearance of Ms. Torres's back pain in January 2003 (R. 212). Moreover, the mere existence of a conflict between the opinions of Dr. Montella and Dr. Kim is not enough to justify disregarding Dr. Montella's opinion without further explanation. *See, e.g.*, 20 C.F.R. § 404.1527(d)(1) ("[g]enerally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you"); *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003) ("An ALJ can reject an examining physician's opinion only for reasons supported by substantial evidence in the record; a contradictory opinion of a non-examining physician does not, by itself, suffice").

Rather, if an ALJ is faced with inconsistencies between two medical opinions, she is obligated to follow 20 C.F.R. § 404.1527, which sets out instructions on "[h]ow we weigh medical opinions." 20 C.F.R. § 404.1527(d) (2006). That regulation specifies a list of factors that an ALJ must consider before deciding how much weight to give to any medical opinion, including the length, nature, and extent of the doctor-patient relationship, as well as the particular specialties of the doctors involved. *Id.* In her decision, the ALJ gave no indication that she considered any of this before dismissing Dr. Montella's opinions in favor of the other doctors' judgments. Following agency regulations is not optional; on remand, the ALJ must abide by 20 C.F.R. § 404.1527(d). *See Wilson v. Comm'r of Social Security*, 378 F.3d 541, 545 (6th Cir. 2004) (stating that "[i]t is an elemental principle of administrative law that agencies are bound to follow their own regulations").

Ms. Torres also argues that while discussing Dr. Montella's opinions, the ALJ improperly "assumed the cloak of [a] physician by relying upon her own observations and opinion" regarding the claimant's medical condition and course of treatment (Pl.'s Mem. at 14). As set forth above, the ALJ characterized Dr. Montella's medical opinion as "extreme," reasoning that "if the claimant were truly disabled by her alleged impairments, one might expect to see more significant physical examination abnormalities" (R. 20). The ALJ added that "the course of treatment pursued by her treating sources has not been consistent with what one would expect if the claimant were truly disabled" (*id.*).

These statements closely parallel remarks made by the same ALJ in *Woolridge v. Barnhart.* No. 03C0105, 2004 WL 2066918 (N.D. Ill. Sept. 8, 2004). In *Woolridge*, the ALJ disregarded a doctor's opinion as to the severity of a claimant's impairments, because she found

16

that if the doctor's opinion were true, there should be "more serious objective findings throughout the medical file" and the claimant should be undergoing "more aggressive treatment measures." *Id.* at \*4. The district court in *Woolridge* found these statements to be improper and remanded the case. *Id.* at \*4-5. In so doing, the district court emphasized that "[t]he Seventh Circuit has cautioned 'administrative law judges of the Social Security Administration' to resist 'the temptation to play doctor' because 'lay intuitions about medical phenomena are often wrong.'" *Id.* at \*4 (citing *Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990)). On remand, we expect that the ALJ will not commit this error again.

We also note that the ALJ's conclusion regarding Ms. Torres's conservative treatment regime provides an additional reason to remand this case. Such remarks "may indicate a misunderstanding of degenerative disc disease, which is generally treated with conservative therapy and only results in an operation in 2% of its sufferers." *Glomski v. Massanari*, 172 F. Supp. 2d 1079, 1085 (E.D. Wisc. 2001) (citing *Scientific American* at 53 (Aug. 1999)). Indeed, the record contains evidence that a conservative treatment regime was reasonable here, such as Dr. Montella's statement that other treatment options were inappropriate for Ms. Torres because they presented "distinct morbidity and unpredictable benefit" (R. 308). For this reason as well, the ALJ's basis for disregarding Dr. Montella's opinion was an error and thus warrants remand. *See Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996) (remanding case in part because ALJ demonstrated a "misunderstanding of the disease").

### 3.

Ms. Torres also challenges the ALJ's determination that her testimony "lacks full credibility" (Pl.'s Mem. at 13-14; R. 21). The ALJ gave the following reasons for this

17

determination: (1) the claimant's medication and treatment did not indicate an impairment as severe as Ms. Torres had described; (2) the record indicated work activity after the onset of back pain, therefore showing that Ms. Torres's "daily activities have, at least at times, been somewhat greater than [she] has generally reported"; (3) the claimant's description of her allegedly limited daily activities could not be "objectively verified"; (4) it was difficult to attribute Ms. Torres's limitations to her medical condition "in view of the relatively weak medical evidence"; and (5) Ms. Torres sat through her 45-minute hearing without appearing uncomfortable (R. 21-22). None of these reasons can withstand judicial review.

The ALJ's first reason – that Ms. Torres should be disbelieved because her treatment and medication did not comport with the ALJ's idea of what they should have been – can be quickly dealt with (R. 21). As explained fully above, this is an improper course of reasoning for an ALJ, and it cannot serve as a reason to deny an applicant disability benefits. *See Woolridge*, 2004 WL 2066918 at *4-5. As for the ALJ's second argument that Ms. Torres's short-lived effort to resume working in December 2002 and January 2003 shows that her "daily activities have, at least at times, been somewhat greater than [she] has generally reported" (R. 21), we fail to understand how an unsuccessful attempt to return to work undermines the credibility of Ms. Torres's testimony about her limited daily activities. Moreover, this Court could find no evidence that Ms. Torres in any way attempted to hide her unsuccessful return to work. To the contrary, that fact was disclosed from the outset of the application process: Ms. Torres mentioned it in a Work Activity Report that accompanied her original disability filings (R. 2, 87-88). Since this reason is unsupported by substantial evidence, this Court finds that it, too, cannot stand. *See* 42 U.S.C. § 405(g).

18

Ms. Torres challenges the ALJ's third reason – that Ms. Torres's testimony about her daily activities could not be objectively verified – on the grounds that an ALJ cannot require a claimant's testimony about her own daily activities to be objectively verifiable (Pl.'s Reply at 3) (citing *Behymer v. Apfel*, 45 F. Supp. 2d 654, 662 (N.D. Ind. 1999)). In *Behymer*, the court held that an ALJ had erred by requiring a claimant's testimony about her daily activities to be "objectively verified with [a] reasonable degree of certainty." 45 F. Supp. 2d at 662. The court found that by requiring objective verification of a claimant's daily activities testimony, the ALJ had in fact "imposed an extra legal requirement of proof upon [the claimant] which was not contained in the statute, regulations, rulings, or case law" and remanded the case for that reason. *Id.*

While not binding, *Behymer* is persuasive. This Court, too, was unable to locate a case, ruling or regulation applying an objective verification standard to a claimant's description of the ways in which her impairment limits her daily activities. Instead, the Seventh Circuit has established that "once the claimant produces medical evidence of an underlying impairment," as Ms. Torres has done, "the Commissioner may not discredit the claimant's testimony as to subjective symptoms merely because they are unsupported by objective evidence." *Carradine v. Barnhart*, 360 F.3d 751, 753 (7th Cir. 2004) (citing *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996)). Certainly, the degree to which a claimant feels her impairment impedes her daily activities can logically be considered a subjective symptom. *See* SSR 96-7p, 1996 WL 374186 at *5 (S.S.A.) (stating that after an ALJ reviews several factors, including a claimant's testimony about her daily activities, the ALJ will have an overview of the claimant's subjective complaints). Therefore, because the ALJ improperly applied an objective verification standard

here, this "error of law requires that the case be remanded for further consideration and application of the correct legal standards." *Behymer*, 45 F. Supp. 2d at 662 (citing *Schmoll v. Harris*, 636 F.2d 1146, 1150 (7th Cir. 1980)).

The ALJ's fourth reason for finding that Ms. Torres lacked credibility was that it was difficult to attribute Ms. Torres's limitations to her medical impairments "in view of the relatively weak medical evidence" (R. 21-22). This reason, too, cannot stand. "An ALJ's credibility determinations are given special deference, but the ALJ must still 'build an accurate and logical bridge between the evidence and the result.'" *Ribaudo*, 458 F.3d at 584 (citing *Shramek v. Apfel*, 226 F.3d 809, 811 (7th Cir. 2000)). Here, this vague reference to "weak medical evidence" cannot suffice as a reason to disregard Ms. Torres's testimony; the ALJ must give more specific reasons for her credibility determination. *See id.* Moreover, this reason is invalid in light of *Carradine*'s statement that "the Commissioner may not discredit the claimant's testimony as to subjective symptoms merely because they are unsupported by objective evidence," as discussed above. 360 F.3d at 753.

Finally, the ALJ's last reason for her credibility determination – that Ms. Torres sat through her 45-minute hearing without appearing uncomfortable – must be rejected as well. It is true that the ALJ did not err in making such an observation; "[w]hile courts have cautioned ALJs against applying a 'sit and squirm' test in their credibility evaluations, they have also endorsed the role of observation in determining credibility." *Pickett v. Barnhart*, No. 04C522, 2004 WL 1535847 at *12 (N.D. Ill. Jul. 7, 2004) (citing *Powers v. Apfel*, 207 F.3d 431, 436 (7th Cir. 2000)). Importantly, though, the case law cautions that an ALJ may only consider his or her observations "[a]s long as the ALJ considers other relevant factors" too. *Id.* Since every other

factor upon which the ALJ based her credibility decision cannot stand, her observation of Ms. Torres cannot alone serve as the basis of a credibility determination. Therefore, since every basis for the ALJ's credibility determination was flawed, this Court cannot uphold that determination and must remand the case.[2] *See Ribaudo*, 458 F.3d at 584.

## B.

Lastly, Ms. Torres finds fault with the ALJ's Step 3 determination that her condition neither met nor equaled listing severity. She argues that this determination was not supported by substantial evidence and thus amounts to an error of law (Pl.'s Mem. at 9). In particular, she asserts that both her own testimony and Dr. Montella's opinion show that she cannot ambulate effectively, and so her condition meets listing severity under 20 C.F.R. Pt. 404, Subpt. P, App. I § 1.02A (Pl.'s Mem. at 10). That regulation, however, clearly requires "[i]nvolvement of one major peripheral weight-bearing joint (*i.e.*, hip, knee, or ankle)."[3] 20 C.F.R. Pt. 404, Subpt. P, App. I § 1.02A (2006). Nothing in the record suggests that Ms. Torres has experienced trouble with any of those three joints. Moreover, the regulations define ineffective ambulation as generally "having insufficient lower extremity functioning...to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities." *Id.* at § 1.00(B)(2)(b)(1). Since neither her own testimony nor Dr. Montella's opinion clearly establishes that Ms. Torres needs such devices to move around, she has not

---

[2]Upon remand, of course, the ALJ must abide by SSR 96-7P. 1996 WL 374186.

[3]Section 1.02A provides, in full, that a claimant must show "[m]ajor dysfunction of a joint(s) . . . [c]haracterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With...[i]nvolvement of one major peripheral weight-bearing joint (*i.e.*, hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b." 20 C.F.R. Pt. 404, Subpt. P, App. I § 1.02A (2006).

shown an inability to ambulate effectively. *See* 42 U.S.C. § 423(d)(5)(A) (stating that "[a]n individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security shall require").

As part of the same argument, Ms. Torres asserts that "[t]he medical evidence shows her condition meets listing severity at 1.04A" (Pl.'s Mem. at 10). Here, her briefs generally suffer from a lack of clear argument. Although she lists a good deal of medical evidence, she fails to explain precisely which pieces of evidence satisfy which requirements of section 1.04A (Pl. Mem. at 9-11).[4] This same problem appears yet again when she argues that her "condition also equals listing severity when the lower back problem is considered in conjunction with the problem with the dominant right upper extremity" but fails to explain which listing's requirements are thereby satisfied (Pl.'s Mem. at 10-11).[5] On remand, this Court advises Ms. Torres to make these arguments much more clearly, so that the ALJ may consider them accordingly.

---

[4] Section 1.04A requires a claimant to show that he or she has a spinal disorder that causes the compromise of a nerve root or the spinal cord. The disorder must also be accompanied by certain neurological deficits: "[e]vidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss . . . accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)." 20 C.F.R. Pt. 404, Subpt. P, App. I § 1.04A. In reviewing whether she meets the requirements of section 1.04(A), Ms. Torres should note that Dr. Montella, on whose medical expertise she otherwise seeks to rely so heavily, did state that she was not experiencing any "neurologic impairment" (R. 310).

[5] Though it is unclear, part of Ms. Torres's argument may appear to be based on a misreading of section 1.02B. Throughout her briefs, she seems to imply that having an impairment in only one arm satisfies the listing severity requirements (Pl.'s Mem. at 9-11; Pl.'s Reply at 1-2), when in actuality section 1.02B plainly requires "each upper extremity" to be impaired. 20 C.F.R. Pt. 404, Subpt. P, App. I § 1.02B. If she is arguing that an impairment in only one arm satisfies some listing requirement other than section 1.02B, she must specify which listing is thereby satisfied.

## CONCLUSION

For the foregoing reasons, the Court grants Ms. Torres's motion for summary judgment and denies the Commissioner's motion for summary judgment. Accordingly, this Court reverses and remands this case to the Social Security Administration, pursuant to sentence 4, 42 U.S.C. § 405(g), for further proceedings consistent with this opinion.

ENTER:

**SIDNEY I. SCHENKIER**
**United States Magistrate Judge**

**Dated: October 31, 2006**